AUSA: Jared D. Hoffman

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

WASCAR MORILLOCLETO,

Defendant.

---

**SEALED COMPLAINT** 24MJ1879

Violations of 21 U.S.C. § 841(a)(1), (b)(1)(A), (B); 18 U.S.C. §§ 922(a)(1)(A), 924(c)

COUNTY OF OFFENSES:
WESTCHESTER

SOUTHERN DISTRICT OF NEW YORK, ss.:

KYLE GORMAN, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

## COUNT ONE
### (Distribution of Narcotics)

1. On or about March 7, 2024, in the Southern District of New York and elsewhere, WASCAR MORILLOCLETO, the defendant, knowingly and intentionally distributed and possessed with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

2. The controlled substance involved in the offense was 40 grams or more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).)

## COUNT TWO
### (Distribution of Narcotics)

3. On or about March 20, 2024, in the Southern District of New York and elsewhere, WASCAR MORILLOCLETO, the defendant, knowingly and intentionally distributed and possessed with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

4. The controlled substance involved in the offense was 500 grams or more of mixtures and substances containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).)

## COUNT THREE
### (Distribution of Narcotics)

5.  On or about March 22, 2024, in the Southern District of New York and elsewhere, WASCAR MORILLOCLETO, the defendant, knowingly and intentionally distributed and possessed with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

6.  The controlled substance involved in the offense was 50 grams or more of mixtures and substances containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).)

## COUNT FOUR
### (Possession of a Firearm in Furtherance of a Drug Trafficking Crime)

7.  On or about March 22, 2024, in the Southern District of New York and elsewhere, WASCAR MORILLOCLETO, the defendant, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, the drug trafficking crime charged in Count Three of this Complaint, knowingly used and carried a firearm, and in furtherance of such crime, possessed a firearm.

(Title 18, United States Code, Section 924(c)(1)(A)(i).)

## COUNT FIVE
### (Unlicensed Dealing of Firearms)

8.  Between on or about March 22, 2024, and May 8, 2024, in the Southern District of New York and elsewhere, WASCAR MORILLOCLETO, the defendant, not being a licensed importer, licensed manufacturer, or licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, willfully and knowingly engaged in the business of importing, manufacturing, and dealing in firearms, and in the course of such business shipped, transported, and received a firearm in interstate and foreign commerce, to wit, over the course of four separate occasions, MORILLOCLETO sold numerous firearms, including two privately manufactured firearms (commonly referred to as "ghost guns"), one assault rifle style firearm with a selector designed to allow the firearm to fire fully automatic, and one Glock with an aftermarket "switch" designed to allow the firearm to fire fully automatic.

(Title 18, United States Code, Section 922(a)(1)(A).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

9.  I have been a Special Agent with the FBI since approximately June 2022. Prior to joining the FBI, I had been a New Jersey State Trooper since January 2019. Over the course of my career, I have participated in numerous investigations of firearms and narcotics trafficking offenses. I have been personally involved in the investigation of this matter.

10. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement agents, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

11. Since in or around March 2024, the FBI and Yonkers Police Department ("YPD") have been investigating WASCAR MORILLOCLETO, the defendant, in connection with his sale of fentanyl, methamphetamine, and firearms in or around Yonkers, New York. Based on my participation in this investigation, review of records maintained by YPD, and communications with members of the FBI and YPD, I am aware of the following:

   a. In or around March 2024, a man later identified as MORILLOCLETO contacted a confidential source of information (the "CI")[1] and offered to sell fentanyl to the CI. After being contacted by the defendant, the CI informed YPD detectives about an individual, later identified as MORILLOCLETO, who was offering to sell fentanyl in or around Yonkers.

   b. On or about March 7, 2024, the FBI and YPD met with the CI to have the CI arrange a controlled purchase with MORILLOCLETO. First, FBI and YPD officers met the CI at a predetermined location, and established surveillance on the CI. FBI agents and YPD officers then searched the CI for money and contraband with negative results. The FBI and YPD also provided the CI with prerecorded buy money for the transaction and outfitted the CI with recording equipment. At the direction and in the presence of FBI and YPD officers, the CI called the cellphone number from which MORILLOCLETO had reached out to the CI and the CI arranged a controlled purchase with MORILLOCLETO at a predetermined location in Yonkers.

   c. FBI and YPD officers surveilled the CI from the meeting location with the FBI agents and YPD officers to the predetermined meeting place in Yonkers where MORILLOCLETO agreed to sell fentanyl to the CI. At the meeting between the CI and MORILLOCLETO, MORILLOCLETO sold the CI approximately 1,553 pills containing fentanyl and told the CI that the CI could purchase a firearm from him at another time.

   d. After the controlled purchase was complete, the CI met with FBI agents and YPD officers and provided the drugs the CI purchased from MORILLOCLETO to the FBI agents and YPD officers. The FBI and YPD detectives took custody of the drugs for evidence and testing to the YPD lab. Testing revealed that the pills weighed approximately 165.5 grams and contained fentanyl.

---

[1] The CI has been assisting the FBI and YPD in connection with this investigation in exchange for compensation as well as deferred action on the CI's unlawful presence in the United States through the duration of the CI's cooperation with law enforcement. The CI has a criminal history that includes multiple felony convictions in New York for criminal possession of a controlled substance. The CI has provided information to the FBI and YPD that has been corroborated and proven reliable.

    e. The CI confirmed that during the controlled purchase of fentanyl, MORILLOCLETO responded to the name "Wasca," which is a reference to his first name, "Wascar," and that the individual the CI spoke with to arrange the controlled purchase had the same voice of the individual the CI met with in person during the controlled purchase.

    f. Additionally, the FBI agents and YPD officers ran the license plates of the vehicle in which MORILLOCLETO arrived and determined that the vehicle was registered to MORILLOCLETO. The FBI and YPD obtained the driver's license for MORILLOCLETO, and I compared the video surveillance captured from the March 7, 2024 controlled purchase with the CI to MORILLOCLETO's driver's license, and I believe the person identified as MORILLOCLETO in the driver's license is the person who sold fentanyl to the CI during a controlled purchase on or about March 7, 2024.

    g. Substantially similar investigative techniques were used for additional controlled buys from MORILLOCLETO while located in Yonkers, New York: (i) on or about March 20, 2024, at approximately 7:56 p.m., MORILLOCLETO sold to the CI approximately 3,000 pills that weighed approximately 1,121 grams and tested positive for methamphetamine; and (ii) on or about March 22, 2024, at approximately 7:29 p.m., MORILLOCLETO sold to the CI approximately 600 pills that weighed approximately 225 grams and contained methamphetamine.

    h. On or about March 22, 2024, when MORILLOCLETO sold to the CI approximately 600 pills that weighed approximately 225 grams and contained methamphetamine, MORILLOCLETO also sold to the CI two firearms. Based on trace reports I received from a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, I am aware that both firearms that MORILLOCLETO sold to the CI were traced to purchases of the firearms from Smith's Guns & Ammo LLC in Reading, Pennsylvania.

    i. On or about April 11, 2024, at approximately 8:01 p.m., in Yonkers, New York, MORILLOCLETO sold to the CI approximately 1,700 pills. Law enforcement is awaiting test results from the pills purchased, but the pills looked identical to the pills that were previously purchased from the defendant on or about March 20 and 22, 2024, *i.e.*, methamphetamine. In addition to selling to the CI approximately 1,700 pills that looked identical to previously purchased methamphetamine, MORILLOCLETO sold to the CI two firearms, both of which were reported stolen from Reading, Pennsylvania.

    j. On or about April 30, 2024, at approximately 7:44 p.m., in Yonkers, New York, MORILLOCLETO sold to the CI three more firearms, including one privately manufactured gun (commonly referred to as a "ghost gun"), one stolen pistol, and one assault rifle with a selector designed to allow the firearm to fire fully automatic.

    k. On or about May 8, 2024, at approximately 8:29 p.m., in Yonkers, New York, MORILLOCLETO sold to the CI three more firearms, including another privately manufactured gun, one handgun, and one Glock with an aftermarket "switch" designed to allow the firearm to fire fully automatic.

  12. As part of this investigation, I could not locate any records to indicate that WASCAR MORILLOCLETO, the defendant, is a licensed importer, licensed manufacturer, or licensed dealer of firearms.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of WASCAR MORILLOCLETO, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

_____
Kyle Gorman
Special Agent
Federal Bureau of Investigation

Sworn to before me this 13th day of May, 2024.

_____
THE HONORABLE ANDREW E. KRAUSE
United States Magistrate Judge
Southern District of New York

5