

**U.S. Department of Justice**

*United States Attorney
Southern District of New York*

*50 Main Street, Suite 1100
White Plains, New York 10606*

September 26, 2025

**BY ECF**
The Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

    Re:   *United States v. Wascar Morillo Cleto*, 25 Cr. 280 (KMK)

Dear Judge Karas:

    The Government respectfully submits this letter in advance of the sentencing of the defendant, Wascar Morillo Cleto, which is scheduled for October 3, 2025. On June 18, 2025, the defendant pled guilty to a two-count information (the "Information") charging him in Count One with distribution, and possession with intent to distribute, 40 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), and in Count Two with unlicensed dealing of firearms, in violation of 18 U.S.C. § 922(a)(1)(A).

    As set forth in the plea agreement, the parties stipulated to a United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") sentencing range of 108 to 135 months' imprisonment, with a mandatory minimum term of 60 months' imprisonment (the "Stipulated Guidelines Range"). The defendant has also agreed to seek a sentence no lower than 108 months' imprisonment. (Plea Agreement at 5). For the reasons set forth below, the Government submits that a sentence within the Stipulated Guidelines Range would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

**I.**    **Background**

    **A.**    **Offense Conduct**

    As summarized in the table below, in a series of controlled purchases conducted between March and May 2024, in Yonkers, New York, the defendant sold to a source of confidential information fentanyl, methamphetamine, and approximately 14 firearms—multiple of which were modified to fire fully automatic, at least two of which were privately manufactured (also known as "ghost guns"), and at least one of which was a semiautomatic firearm capable of accepting a large capacity magazine:

| Date | Controlled Substances Sold by Defendant | Firearms Sold by the Defendant |
|---|---|---|
| 3/7/2024 | 1,553 pills weighing approximately 165.5 grams and containing fentanyl. | None. |
| 3/20/2024 | 3,000 pills weighing approximately 1,121 grams and containing methamphetamine. | None. |

| Date | Controlled Substances Sold by Defendant | Firearms Sold by the Defendant |
|---|---|---|
| 3/22/2024 | 600 pills weighing approximately 225 grams and containing methamphetamine. | Two firearms. |
| 4/11/2024 | 1,700 pills weighing approximately 650.7 grams and containing methamphetamine. | Two firearms. |
| 4/30/2024 | None. | Three firearms: (1) one ghost gun; (2) one pistol; and (3) one assault rifle with a selector designed to allow the firearm to fire fully automatic. |
| 5/8/2024 | None. | Three firearms: (1) one ghost gun; (2) one handgun; and (3) one Glock with an aftermarket "switch" designed to allow the firearm to fire fully automatic. |

(PSR ¶¶ 8-20, 23). When the defendant was arrested during a controlled purchase on May 14, 2024, he was found with four more firearms and ammunition.

## II.     The Guidelines Calculations

On May 13, 2024, the defendant was charged by complaint with one count of distribution of narcotics, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A), two counts of distribution of narcotics, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B), possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c), and unlicensed dealing of firearms, in violation of 18 U.S.C. § 922(a)(1)(A).[1]

On June 18, 2025, the defendant pled guilty to the two-count Information. (PSR ¶ 5). With respect to Count One, pursuant to U.S.S.G. §§ 2D1.1(a)(5) and 2D1.1(c)(4), the base offense level for Count One is 32 because the defendant possessed approximately 165.5 grams of a mixture and substance containing fentanyl (which converts to 413.75 kilograms of Converted Drug Weight), and approximately 1,996.7 grams of a mixture and substance containing methamphetamine (which converts to 3,993.4 kilograms of Converted Drug Weight), resulting in a total Converted Drug Weight of 4,407.15 kilograms. (PSR ¶ 30). Pursuant to § 2D1.1(b)(1), a two-level increase is warranted because a dangerous weapon was possessed. (PSR ¶ 31). Thus, the applicable Guidelines offense level for Count One is 34. (PSR ¶¶ 29, 35).

With respect to Count Two, pursuant to U.S.S.G. § 2K2.1(a)(4)(B), the base offense level is 20 because the offense involved a semiautomatic firearm capable of accepting a large capacity magazine, and the defendant was a prohibited person at the time he committed the instant offense. (PSR at 4). Pursuant to § 2K2.1(b)(1)(B), a four-level increase is warranted because the offense

---

[1] The narcotics trafficking charges in the complaint carried a mandatory minimum sentence of 10 years' imprisonment. Further, because the defendant sold firearms that were modified to act as machine guns, he faced a potential mandatory minimum consecutive sentence of 30 years' imprisonment pursuant to 18 U.S.C. § 924(c)(1)(B)(ii).

involved between 8 and 24 firearms. (PSR at 4). Pursuant to § 2K2.1(b)(4)(A), a two-level increase is warranted because the offense involved at least one stolen firearm. (PSR at 4). Pursuant to § 2K2.1(b)(6)(B), a four-level increase is warranted because the defendant used or possessed any firearm or ammunition in connection with another felony offense, or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense. (PSR at 4). Thus, the applicable Guidelines offense level for Count Two is 30. (PSR at 4).

With respect to grouping, Counts One and Two form a single group because one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the Guidelines applicable to another of the counts. (PSR at 4). Pursuant to § 3D1.3(a), the offense level applicable to the Group is 34, which is the offense level for the most serious of the counts comprising the Group. (PSR at 4). Pursuant to §§ 3E.1.1(a) & (b), a three-level reduction is warranted because the defendant clearly demonstrated acceptance of responsibility. (PSR ¶¶ 27, 37-38). Thus, the total offense level for the Group is 31. (PSR ¶ 39). An offense level of 31 and Criminal History Category I yields a Guidelines range of 108 to 135 months' imprisonment, which includes a mandatory minimum term of imprisonment of 60 months on Count One.

Probation recommends a sentence of 96 months' imprisonment, comprised of 96 months on Count One, and 60 months on Count Two, with the terms to run concurrently. (PSR at 20). The defendant has agreed to seek a sentence no lower than 108 months' imprisonment. (Plea Agreement at 5).

### III. <u>Applicable Law</u>

The Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), and district courts are required to treat them as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49. After calculating the Guidelines, the Court must consider seven factors: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) the purposes of sentencing discussed in the next paragraph, (3) "the kinds of sentences available," (4) the Guidelines range itself, (5) any relevant policy statements by the Sentencing Commission, (6) "the need to avoid unwarranted sentence disparities among defendants," and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); *see also Gall*, 552 U.S. at 49-50 & n.6.

In determining the appropriate sentence, Section 3553(a) directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

  (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
  (B)   to afford adequate deterrence for criminal conduct;
  (C)   to protect the public from further crimes of the defendant; and
  (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### IV.  A Guidelines Sentence Is Appropriate

The Court should impose a Guidelines sentence in this case.

*First*, the defendant's conduct was serious and deserves an appropriately serious punishment. Over the course of several months, the defendant sought to fuel drug addiction and violence in Westchester communities by pumping it with fentanyl and methamphetamine, and introducing over a dozen guns, some of which were modified to fire fully automatic, some of which were untraceable ghost guns, and at least one of which was capable of accepting a large capacity magazine. This Court well knows of the pervasiveness of drug addiction and gun violence in Westchester's communities, and the way they destroy the lives of its residents. But the defendant's conduct is exacerbated by the nature of the weapons he sold (many of which were modified to unleash additional lethal force) and of the drugs he sold (fentanyl is a particularly lethal controlled substance).[2] Although the defendant's conduct did not yield any victims, had he not sold the drugs and guns to a CI, he could have inflicted immense harm upon countless people. The Court should send a clear message that those who seek to profit from introducing drugs and guns into this community will be appropriately punished.

*Second*, a sentence within the Stipulated Guidelines Range is necessary to promote general deterrence. The possession of guns and ammunition by those expressly prohibited from having them—including those, like Morillo Cleto, who is unlawfully present in the United States (PSR ¶ 70)—poses grave risks to public safety, especially when the firearms are used in connection with drug dealing. A Guidelines sentence would send a strong signal that the illegal possession of firearms and ammunition will be dealt with seriously. Indeed, in "a case involving guns," "a substantial sentence" is "the primary means by which the court can communicate to the public that firearms are inimical to the safety of persons living in a densely-populated urban community, and that illegal possession will be severely punished." *United States v. Levy*, No. 16-CR-270, 2017 WL 4381398, at *5 (E.D.N.Y. Aug. 9, 2017), *aff'd as modified*, 738 F. App'x 724 (2d Cir. 2018). At a time when gun violence and drug crimes are so prevalent, and so destructive, the need for general deterrence has never been greater.

If these were the only factors relevant to sentencing, the Government might well have sought a different resolution of this matter. But there are mitigating factors in this case. For one thing, the defendant's conduct, while serious, was relatively short-lived: he participated in approximately seven controlled purchases over the course of a few months, and the conduct appears to be financially motivated. (PSR ¶¶ 54, 69). His submission reasonably highlights that this offense represents the defendant's first criminal conviction, and that his subsequent

---

[2] *See Fentanyl and the U.S. Opioid Epidemic*, Council on Foreign Relations (last updated Mar. 28, 2025), https://cfr.org/backgrounder/fentanyl-and-us-opioid-epidemic ("Fentanyl and other opioids have fueled the worst drug crisis in U.S. history. In recent years, fatal overdose numbers have become defined by illicit fentanyl, an extremely lethal synthetic opioid, with more than two-thirds of overdoses being from this class of drug."); *Facts About Fentanyl*, United States Drug Enforcement Administration, *Facts About Fentanyl*, https://www.dea.gov/resources/facts-about-fentanyl (last visited Sept. 26, 2025) (noting just "[t]wo milligrams of fentanyl can be lethal").

deportation to the Dominican Republic will be a form of punishment too. (Dkt. 45 at 2-3).

███████████████████████████████████████████████████████████████████████

**V.       Conclusion**

For the reasons set forth above, the Court should impose a Guidelines sentence.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By:    /s/ Jared D. Hoffman
       Jared D. Hoffman
       Assistant United States Attorney
       (212) 637-1060

Cc:    Evans Prieston, Esq. (by ECF)